In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE
STATE OF MISSOURI, ) No. ED109099
 )
 Respondent, )
 ) Appeal from the Circuit Court
 ) of St. Louis County
 vs. ) Cause No. 15SL-CR02123-01
 )
JAMES C. STREET, ) Honorable John D. Warner, Jr.
 )
 Appellant. ) Filed: September 14, 2021

 OPINION

 James C. Street (“Defendant”) appeals the judgment entered on his conviction after a

bench trial for one count of assault in the third degree. The assault was charged as a class D

felony under § 557.035, known as the Hate Crime statute.1 In his sole cognizable point on

appeal, Defendant claims there was insufficient evidence that he assaulted the victim because of

his race.2 We affirm.

1
 This crime occurred in 2015, thus all statutory references are to Mo. Rev. Stat. 2000. The statute has since been
amended, but not in any relevant way.

2
 Defendant also attempts to raise an ineffective assistance of counsel claim, which is not cognizable on direct
appeal and must be presented in a motion under Rule 29.15. See State v. West, 551 S.W.3d 506, 517 (Mo. App. E.D.
2018).

 1
 I. Procedural and Factual Background

 There is no dispute that in March of 2015, Defendant punched Curtis Ford (“Victim”) in

the face with a closed fist at a gas station in Fenton, Missouri. Victim is African-American.

Defendant is Caucasian and Asian. Viewed in the light most favorable to the verdict, the

evidence at the 2019 bench trial was as follows.

 As Victim and Defendant pulled into the gas station lot, they had a very brief right-of-

way stalemate near the parking spaces in front of the gas station store. After just a few seconds,

Victim pulled forward out of the way, and Defendant pulled into a parking space. Victim backed

up and then pulled alongside a gas pump. Defendant got out of his car and walked toward

Victim’s car screaming “n----r” at Victim and telling him he did not belong there. Defendant

yelled “N----r, go back to Ferguson” and told Victim he was “acting like a Ferguson n----r right

now.” Victim does not live in Ferguson, and there was no evidence suggesting that Defendant

had any reason to believe that is where Victim lived.3

 As Defendant was screaming at him, Victim got out of his car asking what he had done.

Defendant responded with further racial comments, so Victim said something along the lines of

“screw you.” Defendant walked into the gas station store. Victim waited a few moments and then

headed into the store to pre-pay for his gas with cash. He and Defendant met in the doorway, at

which point Defendant said “Hey, this is your lucky day, partner.” Victim said “No, it’s your

lucky day.” Defendant then punched Victim in the face. The entire incident--from the time the

cars met in the parking lot to the time Defendant hit Victim in the doorway of the store--lasted

3
 We take judicial notice that, in the seven months preceding this assault, (1) Michael Brown, a Black man, was shot
and killed in Ferguson in August of 2014 by a White police officer, (2) the grand jury declined indictment of that
officer in November of 2014, and (3) these events sparked both peaceful protests and violent rioting in Ferguson and
elsewhere that persisted for months.

 2
only a couple of minutes. An eyewitness testified that Defendant called Victim “n----r” at least

ten times in that short period.

 The trial court found Defendant guilty, and he was sentenced as a persistent offender to

five years in prison. Execution of that sentence was suspended, and Defendant was placed on

probation.

 This appeal follows.

 II. Standard of Review

 We review the sufficiency of the evidence in a bench trial of a criminal case to determine

whether there was sufficient evidence from which the trier of fact could have reasonably found

the defendant guilty. State v. Banks, 511 S.W.3d 463, 465 (Mo. App. E.D. 2017). We review the

evidence and inferences in the light most favorable to the verdict and ignore all contrary

evidence and inferences. Id. “[We] will not reweigh the evidence on appeal; rather, we give great

deference to the trier of fact, who may believe all, some, or none of the testimony of a witness.”

State v. Young, 582 S.W.3d 84, 95 (Mo. App. E.D. 2019).

 III. Discussion

 Defendant concedes that he punched Victim, but contends the evidence was insufficient

to prove beyond a reasonable doubt that he did so because Victim was Black. We disagree.

 In relevant part, § 557.035 provides that for violations of certain specified sections of the

criminal code, including the section criminalizing assault in the third degree,4 “which the state

believes to be knowingly motivated because of race, color, religion, national origin, sex, sexual

orientation or disability of the victim or victims, the state may charge the crime or crimes under

this section, and the violation is a class D felony.” § 557.035.2. “The court shall assess

4
 At the time of this crime, assault in the third degree was codified at § 565.070, but has since been transferred to
another section.

 3
punishment in all of the cases in which the state pleads and proves any of the motivating factors

listed in this section.” § 557.035.3.

 “Because of” in hate crime statutes means that “but for” the victim’s race or other

enumerated characteristics, the defendant would not have committed the crime. See generally

United States v. Miller, 767 F.3d 585, 591-93 (6th Cir. 2014) (discussing United States Supreme

Court and other federal jurisprudence regarding “because of” language in hate crime and other

criminal and civil statutes). Whether a defendant was “motivated because of” one of the

enumerated factors can be inferred from circumstantial evidence, as that is usually the manner in

which motive, intent, or mental state is proven. See State v. Callen, 97 S.W.3d 105, 109-110

(Mo. App. W.D. 2002). Thus, the defendant’s motive for committing the crime can be inferred

from his conduct before, during, and after the crime. Id. at 110-11 (concluding that evidence of

the defendant’s actions before, during, and after trespass was sufficient to demonstrate his “racial

animosity” towards the victim, and the trial court could have reasonably found the trespass on

her property was motivated by her race).

 Defendant repeatedly and angrily referred to Victim as a “n----r,” and suggested that

Victim did not belong there and should go “back” to Ferguson. It is reasonable to infer under

these circumstances that Defendant meant Victim did not belong there in Fenton because he was

Black and negatively associated Victim with the recent racial unrest in Ferguson. These racist

statements were made mere moments prior to punching Victim and are clear evidence that the

assault was motivated by Victim’s race. Defendant points out that he did not hit Victim while he

was calling him a “n----r” and that he did not utter any racial slurs at the moment he actually

threw the punch. The passage of those few moments does not in any way diminish the import of

Defendant’s use of racial epithets in determining his motive. It is entirely reasonable to infer that,

 4
under these circumstances, Defendant’s obvious racial animosity toward Victim did not

evaporate in the minute-long interlude before he punched him.

 We reject Defendant’s argument that based on the evidence presented in two other hate

crime cases, more evidence than what the State presented here is required to prove the “because

of” element in § 557.035.2. He cites Callen, supra, in which the defendant was convicted for

trespass under § 557.035, and United States v. Metcalf, 881 F.3d 641 (8th Cir. 2018), in which

the defendant was convicted under 18 U.S.C. § 249 (Hate Crimes Prevention Act of 2009) for

attacking the victim “because of” his race. To be sure, there were more examples of the

defendant’s racial animosity toward the victim in Callen and Metcalf. But the number of times a

defendant says or does something that indicates his motive is not, in and of itself, dispositive.

Callen and Metcalf involved more evidence because the defendant’s interaction with the victim

in those cases occurred over hours, days, weeks, and years prior to the crime itself. In Callen,

years before the charged crime, the defendant had been permanently banned from the victim’s

workplace for distributing KKK pamphlets, yet he continued to go there every few months over

the next several years making racist remarks to the victim, who was African-American, and

wearing or displaying KKK paraphernalia, including on the day of the actual trespass. 97 S.W.3d

at 110-11. In Metcalf, the defendant confronted the victim, who was African-American, and his

friends at a bar and then over the next couple of hours, bragged about burning crosses, repeatedly

used the word “n----r,” said he hated “f---ing n----rs,” showed off his swastika tattoo, and called

the victim’s friends “n----r lovers,” culminating in a violent melee during which the defendant

repeatedly kicked and stomped on the victim’s head saying “f---ing n----r” and “die n----r.” 881

F.3d at 643-44.

 5
 Here, the entire incident was over in a matter of moments, but the evidence of

Defendant’s motive was just as convincing as in the above cases. Within seconds of a brief and

common parking lot interaction with a Black man he did not know, Defendant repeatedly

screamed an extremely offensive racial slur at him, indicated he did not belong in that part of

town because he was Black, and punched him in the face. This was more than sufficient evidence

from which the trial court could reasonably conclude that but for Victim’s race, Defendant would

not have assaulted him.

 Defendant’s claim that there is other evidence from which a reasonable trier of fact could

have concluded that he had a non-racial motivation for punching Victim is misplaced under our

standard of review. Defendant relies on his statement to police in which he claimed that (a) he hit

Victim because of the build-up of their preceding argument, which he said included threatening

words and conduct from Victim, (b) Victim called him “White boy” when they met in the

doorway, which caused him to lash out and hit Victim, and (c) when he called Victim a “n----r”

he did not mean it as a racial slur because he calls everyone that, acknowledging that is a

“character flaw.” The trial court was, of course, free to disbelieve all or part of these statements,

and on appeal we must disregard that evidence and any inferences about motive that could have

been drawn from those statements because they are contrary to the verdict. See Banks, 511

S.W.3d at 465; Young, 582 S.W.3d at 95. Defendant also claims that because he is biracial and

therefore a minority himself, there can be no racism or discrimination inferred from his conduct.

Again, such an inference is contrary to the trial court’s verdict and must be disregarded on

appeal. A defendant of mixed White and Asian heritage repeatedly calling a Black man “n----r”

and telling him he did not belong because he was Black is more than sufficient evidence that the

ensuing assault was motivated by the victim’s race.

 6
 IV. Conclusion

 All points are denied, and the judgment is affirmed.

 _______________________________
 Colleen Dolan, J.

Philip M. Hess, P. J., concurs.
Angela T. Quigless, J., concurs.

 7